Revaluation Expenses — Unspent Money 1. If the county assessor does not spend all money appropriated to him for expenditure during the year on revaluation as provided in 68 O.S. 2481.4 [68-2481.4] (1968), the unspent money must be returned to the various recipients who appropriated it to him for expenditure. 2. The proceeds of mill rates voted for cooperative county and joint city county libraries, county health purposes, area school districts for vocational and technical schools, and school districts lying in more than one county are subject to the cost of revaluation. The Attorney General has had under consideration your letter of March 19, 1969, wherein you asked the following questions: "1. Where, on June 30 of any fiscal year, there is an unexpended and unencumbered surplus remaining in the revaluation budget account, must the county excise board carry forward and reappropriate such surplus to said account for the then current fiscal year, unless the certificate prescribed in 62 O.S. 331 [62-331] (1961), is attached to the county's budget as filed with the county excise board? "2. Does said section require the pro rata share of the program's cost to be levied against the proceeds of mill rates voted under Article 10 Section 10A, of the Oklahoma Constitution, for cooperative county and joint city-county libraries? "3. Should such program's cost be levied against the proceeds of mill rates voted under Article X, Section 9A, Oklahoma Constitution, for county health purposes? "4. Should such program's cost be charged against the proceeds of mill rates voted under Article X, Section 9B of the Oklahoma Constitution, for area school districts for vocational and technical schools? "5. Are the proceeds of levies made to operate and maintain a school where the district is lying in more than one county, subject to the cost of such program?" Title 68 O.S. 2481.1 [68-2481.1] — 68 O.S. 2481.11 [68-2481.11] (1961) provides for the revaluation of taxable property. Section 68 O.S. 2481.4 [68-2481.4] provides: "The cost of the comprehensive program of revaluation shall be paid by those who receive the revenues of the mill rates levied on the property of the county in the following manner: The county assessor shall prepare a special budget for such comprehensive program of revaluation and file the same with the county equalization and excise board. That board shall apportion such cost among the various recipients of revenues from the mill rates levied, including the county, all cities and towns, all school districts and all sinking funds of such recipients, in the ratio which each recipient's total tax proceeds collected from its mill rates levied for the preceding year bears to the total tax proceeds of all recipients from all their mill rates levied for the preceding year. Such amounts shall be included in or added to the budgets of each such recipient, including sinking funds, and the mill rates to be established by the board for each such recipient for the current year shall include and be based upon such amounts. Then the board and each such recipient shall appropriate the said amounts to the county assessor for expenditure for the comprehensive program of revaluation." Title 62 O.S. 331 [62-331] (1961), provides in relevant part: ". . . All special `Funds' arising out of an ad valorem tax levy, within the limitations of said Article X, Section 9 Constitution, except Separate School Funds, authorized or required by existing laws to be devoted to a specific or special purpose, or that may hereafter be so authorized or required, unless specifically excepted, shall, from and after the effective date of this Act, be accounted for as integral `Budget Accounts' within and as a part of the said `General Fund.' Each such integral Budget Account shall bear the title ascribed by law to such special purpose, and it shall be subject to be so itemized for purpose of appropriation as the law may direct for the accomplishment of such special purpose, and none of the items of appropriation within such special Budget Account shall ever be expended for any purpose other than provided by the law creating such special fund (now Budget Account) nor shall any part of it ever be available for transfer to any other budget account within the General Fund. . . . . . . "If a levy for a special purpose be mandatory, under legislative exercise of the sovereign powers of the State to direct a constitutional function, the total of the several items of appropriation for such mandatory special purpose must be fixed by the County Excise Board at the equivalent of the net proceeds of such ad valorem rate as the law may direct, plus the amount of any unexpended balance of appropriations for the same special purpose of the preceding year; provided, however, that if the said governing board of the municipality attach to the estimate of needs for the ensuing year a certificate executed under oath that all of the requirements of the legislative mandate involving such special fund or account have been fully met, the total of appropriations then to be approved shall be limited to the equivalent of the net proceeds of such mandatory levy, plus ninety per cent of the miscellaneous revenue collected from such source during the preceding fiscal year." There is no special fund for the financing or revaluation which arises out of an ad valorem tax levy. Rather the budgets of individual recipients of mill rate levies include an amount necessary to cover their share of the revaluation program's estimated cost for the year. The mill rates levied for each such recipient are held based upon a budget which contains this item and the money is placed in the Budget Account of the recipients. The board and the various recipients of mill rate levies appropriate the money from the individual Budget to the County assessor for expenditure that year on the revaluation program. No separate Budget Account arising out of a tax levy as contemplated in 68 O.S. 331 [68-331] is created and there is no mandatory levy as completed in 68 O.S. 331 [68-331] (1961). Therefore. it is the opinion of the Attorney General that since the money appropriated to the county assessor as provided in 68 O.S.Supp. 2481.4 (1968) is the expenditure in the revaluation program during the year, if the county assessor should complete the revaluation and have a balance remaining during the year or if at the end of the year he has not spent the total amount given to for expenditure during the year, he must return the unspent money to the recipients who appropriated the money to him for expenditure on revaluation. Regarding your second, third, fourth and fifth questions, it should be noted that 68 O.S. 2481.4 [68-2481.4] (1968) provides that the cost of revaluation shall be paid by those who receive the revenues of mill rates levied including the county all cities, and towns, all school districts and all sinking funds. No exceptions are made. Where language of a statute is not ambiguous and the effect not absurd, the language must be given its plain meaning. City of Duncan ex rel. Board of Trustees of Police Pension and Retirement System v. Bames, Okl. 293 P.2d 590 (1956). Therefore, these questions should be answered in the affirmative. The proceeds of mill rates voted for cooperative county and joint city-county libraries, county health purposes, area school districts for vocational and technical schools, and school districts lying in more than one county are subject to the cost of revaluation. A recipient which receives revenues from more than one county, such as a cooperative county library or a school district lying in more than one county, pays to the revaluation budget of a county its proportionate share of the valuation costs for that county figured on the ratio its total tax proceeds collected from mill levies within the county bears to the total tax proceeds of all recipients from all mill rates levied within the county for the preceding year. (Prudence Little)