**Jack GARRUBA, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15416.**

Court of Criminal Appeals of Oklahoma.

July 22, 1970.

Don Anderson, Public Defender, for plaintiff in error.

Jack Garruba, pro se.

G. T. Blankenship, Atty. Gen., for defendant in error.

BUSSEY, Judge.

Jack Garruba, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County for the crime of Burglary in the Second Degree, After Former Conviction of a Felony. The punishment to be as-

sessed was left to the Court, who fixed punishment at 15 years imprisonment in the state penitentiary, and a timely appeal has been perfected to this Court.

The facts adduced on the trial reveal that on July 7, 1968, Shirley Martin drove into the parking lot of O'Mealey's Cafeteria about 7:30 p. m. to pick up his daughter from work. He noticed a man, whom he identified in court as defendant, take a piece of luggage from a 1965 Mustang parked there and put it in a two-toned red and white 1959 Ford. He then saw the man return to the Mustang and remove a second piece of luggage. This looked suspicious to Martin, so he took the tag number from the 1959 Ford and left it in a note with Martin's name and telephone number under the windshield wiper of the Mustang. Shirley said the man removing the luggage wore khaki trousers, and after getting the luggage the defendant entered Hudson from the alley and went north, Hudson being a one-way street south.

Dr. Stuart Simon testified that on July 7, 1968, he parked his car at O'Mealey's Cafeteria on the west side parking lot about 7:00 p. m. The car was a 1965 Mustang, containing two pieces of luggage. He left the car locked, and was in the cafeteria eating for about 45 minutes. As he returned he noticed his luggage was missing and a note was tucked under the windshield wiper to the effect, "I saw a man transfer luggage from your car to his," giving a license number, describing a red and white Ford, and giving the name Martin with an Edmond address (R 23). The left side of the car was unlocked on his return.

The license number checked out to the defendant as owner, and defendant admitted to Officer Kerlick that he was the owner of the 1959 red and white Ford, but denied to Kerlick that he was ever at the O'Mealey parking lot.

Mrs. Rosa Margaret Ash, defendant's sister, customarily did his laundry, and testified he never did have any khaki trousers as far as she knew.

Connie Gray testified that in early July of 1968, he was with defendant in Missouri on a fishing trip, and that they did not return until Monday after the 4th of July, which would have been July 8th. He had been drinking and conceded that his memory might not be too clear, but believed that he and defendant returned from Missouri on Monday.

The defendant did not testify in his own behalf.

■ On appeal it is first contended that the evidence is insufficient to support the verdict of the jury. From the foregoing recital of facts, it is readily apparent that the evidence offered on behalf of the State, although in sharp conflict with the evidence offered on behalf of defendant, was sufficient, if believed, to support the verdict of the jury. In Williams v. State, Okl.Cr., 373 P.2d 91, we held:

"Where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts."

Under the authority above set forth, we are of the opinion that this assignment of error is without merit.

The defendant has filed a pro se brief alleging that the State failed to produce the stolen property or the value thereof, and further "While breaking and entering necessary to constitute crime of burglary may be shown by circumstantial evidence, there must be some proof, either direct or circumstantial, that building was in fact broken into within the meaning of the statute defining burglary."

■ Title 21 O.S. § 1435, under the provisions of which the defendant was charged, tried, and convicted, reads in pertinent part:

"Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel, or other structure * * * in which any property is kept, * * * with intent to steal therein or to commit any felony, is guilty of burglary in the second degree."

The defendant, in his pro se brief, attempts to make a big issue of the fact that the State failed to establish the value of the property stolen. In the early case of Sullivan v. State, 7 Okl.Cr. 307, 123 P. 569, in Syllabus 1(b), this Court, speaking through the Honorable Judge Armstrong stated:

"'Steal' as the word is used in the burglary statute * * * is an offense of such character that it is burglary to break and enter with intent to steal, without regard to the value of the property sought to be taken."

See also Henley v. State, Okl.Cr., 371 P.2d 928.

As to the proof necessary to show that the automobile was broken into within the meaning of the statute defining burglary, this Court, speaking through the Honorable Judge Chappel in the case of Yeargin v. State, 54 Okl.Cr. 34, 14 P.2d 431, had this to say:

"Defendant further contends that, since there is no evidence of actual breaking, the evidence is for that reason not sufficient. Breaking and entering, to constitute the crime of burglary, may *consist in the opening of a closed door.*" [Emphasis added].

In the instant case Dr. Simon testified that he closed all of the doors and attempted to lock them when he entered O'Mealey's Cafeteria and when he returned one of the doors was unlocked. While it is not certain as to whether or not the doors were locked when Dr. Simon left the car and entered the cafeteria, all the doors were closed and one door was opened when the witness observed the removal of the luggage. From these circumstances the jury apparently believed the defendant opened the door which is a suffi-

cient breaking and entering under the authority of Yeargin v. State, supra.

Finding these assignments of error without merit, we shall next consider the defendant's proposition that the trial court erred in allowing the prosecuting attorney to reveal defendant's past record to the jury in the first stage of the trial. On page 59 of the case made, on cross-examination of defendant's witness, Connie Gray, after determining that Mr. Gray had done time for burglary and robbery, we find the following questions and answers:

"Q. Now, how long have you known the defendant Jack Garruba?

A. I don't rightly say, quite a while.

Q. Well, can you—

THE COURT: Can you give an approximate, how many months or years because, 'That I can't say, quite a while,' doesn't mean anything.

A. Well, several years.

Q. (BY MR. DENNIS) Well, where were you when you first met him?

A. I think in the penitentiary.

Q. Where?

A. Down at McAlester.

MR. WOMACK: If the Court please, I object to that and move for a mistrial.

THE COURT: Overruled and exception allowed.

Q. (BY MR. DENNIS) Was this while you were doing time for the robbery or the burglary, sir?

A. Well, sir, I don't really know.

Q. You don't really know?

A. No, sir, I don't.

Q. Well, how well have you known through these years? [sic]

A. Well, I worked in a brick yard with him for a couple of years in '57, 8, somewhere around in there."

 While from an examination of the foregoing testimony it is clear that no mention was made of defendant's prior conviction; nevertheless, it is apparent that counsel was eliciting information from the witness from which it might be reasonably inferred that the defendant had a prior conviction. The inference thus created by the cross-examination of counsel does not, in the instant case, require reversal, but its injection into the case came so precariously close to reversible error that we are constrained to consider it as a basis for modification.

It is lastly contended that the trial court erred in giving Instruction 3a as to good time credits under authority of 57 O.S. § 138, over objection of counsel, in the second stage of the two-stage proceeding, after the defendant had been found guilty. In the Syllabus of Williams v. State, Okl. Cr., 461 P.2d 997, we stated the following:

"1. It is error for the trial court to instruct the jury on time credits as provided in 57 O.S.Supp.1968, § 138, but where the instruction is given after a determination of the defendant's guilt, it does not constitute reversible error.

2. Where it appears that the giving of an erroneous instruction, together with other errors not requiring reversal, may have caused the jury to impose a greater sentence, in the interest of justice the judgment and sentence will be modified and as so modified, affirmed."

The giving of this instruction would not, in the instant case, require reversal since the punishment was imposed by the court, but when considered with the cross-examination of witness Gray by counsel for the State, we are of the opinion that the ends of justice would best be served by modifying the judgment and sentence from a term of Fifteen (15) years imprisonment to a term of Ten (10) years imprisonment, and as so modified, the judgment and sentence is Affirmed. Modified and affirmed.

BRETT, P. J., and NIX, J., concur.