Leroy CAROLINA, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–89–680.

Court of Criminal Appeals of Oklahoma.

Oct. 5, 1992.

Lee Ann Jones Peters, Asst. Public Defender, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Appellant, Leroy Carolina, was found guilty of Possession of a Controlled Dangerous Substance, After Former Conviction of a Felony, in violation of 63 O.S.Supp. 1986, § 2–401, in Case No CRF–88–5723, in the District Court of Oklahoma County. The jury assessed punishment at ten (10) years imprisonment which the trial court imposed. From this Judgment and Sentence, the appellant has perfected his appeal to this Court.

On October 8, 1988, Officer Gravel, Officer Bradford, and Officer Hughes conducted a surveillance upon a neighborhood known for drug activity. Looking through binoculars, they observed activity at a residence at which a brown car was parked in the driveway. This car was occupied by appellant, who was sitting on the passenger side of the front seat, and by a juvenile, B.H., who was on the driver's side. Vehicles would drive up to the residence and stop in the street. The juvenile would approach the cars and talk to the occupants. He would then go back to the brown car and talk to the appellant. After that B.H. would return to the car in the street which would subsequently drive off and B. H. would return to the brown car until another car approached. The cars stopped in the street approximately five minutes each time.

After watching the activity for a while, the officers proceeded to drive to the scene. Officers Gravel and Bradford did not see the juvenile right away when they pulled onto the street. However, Officer Hughes spotted him walking toward the brown car in the driveway. Hughes drove his car over the curb and onto the lawn. He observed the juvenile toss a small plastic pill bottle into the car. The officer testified that the appellant picked up the bottle and started trying to open the glove box. At this point, Officer Hughes, who was on the passenger side of the car, drew his service revolver and ordered the appellant to stop. Upon the officer's repeated requests, the appellant exited the car, turned his back to Hughes and continued reaching inside the car. At this point, the other officers arrived. Officer Gravel testified that he saw the appellant holding the plastic pill bottle. As appellant stood up, he dropped the bottle on the ground and it rolled under the car. When the bottle was retrieved, it was found to contain crack cocaine. The appellant and the juvenile were placed under arrest. At the time of arrest, appellant was carrying four (4) dollars and the juvenile possessed thirty-five (35) dollars.

■ In his first assignment of error appellant alleges that the evidence was insufficient to support his conviction because the State was unable to prove beyond a reasonable doubt that appellant knowingly and intentionally possessed the cocaine which was found by the police. In order to sustain appellant's conviction, it must be found that any rational trier of fact, when viewing the evidence in a light most favorable to the State, could have found the elements of the crime beyond a reasonable doubt. *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985). We find that this test was met in the present case.

■ While knowing and intentional possession must be proven in order to sustain a conviction for the crime of Posses-

sion of a Controlled Dangerous Substance, such elements can be proven by circumstantial evidence. Circumstantial proof of knowing and intentional possession requires that guilt be determined through a series of inferences. *See Johnson v. State*, 764 P.2d 530, 532 (Okl.Cr.1988). Where an accused did not have exclusive access, use or possession of the premises upon which drugs are found, constructive possession may be proven if there are additional independent factors which show his knowledge and control of the drugs. *Staples v. State*, 528 P.2d 1131, 1134 (Okl.Cr.1974). Such independent factors may include incriminating conduct by the accused or other circumstances from which possession may be fairly inferred. *Id.*

In the present case, it is true that the appellant was only seen in actual possession of the cocaine for a short period of time after the juvenile had tossed the bottle to him. However, it may reasonably be inferred from the officers' testimony that the appellant was holding the bottle and trying to open the glove compartment, that the appellant was trying to conceal the bottle in the glove compartment of the car. We find this to be incriminating conduct from which knowledge may reasonably be inferred. Further, from the evidence that appellant tried to conceal the bottle in the glove compartment of his vehicle rather than immediately tossing it back to the juvenile or out of his car, it may be fairly inferred that he intended to possess the drugs. Thus, we find the evidence sufficient to sustain the jury's verdict.

■ In his second assignment of error, appellant claims that the trial court erred in allowing the prosecutor to cross examine defense witnesses about their pending criminal charges. At trial, Don Bradford and his wife, who were staying at the residence at which the appellant's car was parked at the time of his arrest, were called to testify on behalf of the appellant. They testified that the juvenile had been trying to sell some drugs that day but that they had never seen the appellant possess drugs. There was also testimony that they did not like drugs around the house. On cross examination, the prosecutor elicited that Mr. Bradford and his wife had subsequently been arrested for trafficking drugs and maintaining a house where drugs are kept. Defense counsel objected to this line of questioning on the basis that prior arrests are not a proper subject of impeachment. The prosecutor argued that the witnesses' prior arrests were admissible to show bias against the State. The trial court overruled the objection.

■ It is well settled law in Oklahoma that it is not proper to impeach a witness by cross examination regarding arrests which have not culminated in convictions. *McDonald v. State*, 764 P.2d 202 (Okl.Cr. 1988). However, in *McDonald*, this Court specifically left unanswered the question of whether evidence of a witness' prior arrest may be admissible in cases where it is offered to show bias. *Id.*, at 206 n. 1. This question was answered in part by *Beck v. State*, 824 P.2d 385 (Okl.Cr.1991), in which this Court recently found that error occurred when a defendant was not allowed to cross examine a state's witness as to charges that had been filed against him and later dismissed. This Court prefaced this finding not on the evidence code, but rather on the common law and the constitutional right of confrontation that is afforded every criminal defendant. *Id. See also,* U.S. Const. amend. VI; Okla.Const., art. II, § 20.

■ While *Beck* allows a defendant to cross examine a state's witness about prior convictions for purposes of showing bias, it does not specifically address the issue of whether the same latitude may be afforded the prosecution which seeks to show the bias of a defense witness by cross examination as to his or her prior arrests. However, this Court did note in *Beck* that evidence which impeaches a witness for bias is not regulated by the evidence code, but through common law principles. *Id.* 824 P.2d at 388. In recognizing the importance of bias evidence we found that it is never collateral. *Id.* We have also held that "[a] witness may be cross examined as to any matter tending to show bias or prejudice or circumstances under which one would be

tempted to swear falsely." *Dunham v. State,* 762 P.2d 969, 973 (Okl.Cr.1988). Thus, we find that the common law principles articulated by this Court support a ruling that evidence of a defense witness' prior arrest may be admissible to show bias.

However, we do not promulgate rule without limitation. As was noted in *Beck,* 824 P.2d at 389, the scope and procedure for admitting evidence of prior arrests to show bias must conform to the general requirements set forth in the Oklahoma evidence code. The admissibility of such evidence must be based upon a finding that a showing of bias to impeach a witness is relevant under 12 O.S.1981, § 2401 and admissible under 12 O.S.1981, § 2402. Further, evidence of bias, though relevant, should be excluded if its probative value is substantially outweighed by the dangers specified in 12 O.S.1981, § 2403.

As to this final requirement, that the probative value of the bias evidence not be outweighed by the danger of unfair prejudice, we find that additional guidance is in order. Several other jurisdictions have also concluded that cross examination of a defense witness as to prior arrests may be admissible to show bias. Two of these in particular have noted concerns with this ruling which we find to be worthy of mention. In *Commonwealth v. Smith,* 26 Mass.App.Ct. 673, 532 N.E.2d 57 (1988), the court noted that when a witness for the prosecution is facing criminal charges, it is easy to deduce how those charges may be seen to suggest that the witness is seeking favor with the state. The Massachusetts court went on to state, that it is a far less persuasive position that a defense witness who is facing charges will, for no other reason, have a tendency to testify falsely against the state and in favor of the defendant. *Id.,* 532 N.E.2d at 59, 60. The Indiana Supreme Court, in *Jones v. State,* 467 N.E.2d 1179 (Ind.1984), voiced a similar concern, that it is conceivable that every person who has been arrested for any offense may harbor feelings of hostility toward the state. However, they found that this general bias is not sufficient to justify the admission of evidence of a prior arrest in every instance.

While we agree with the concerns voiced by these two courts on this issue, we also agree with the limitations which they have imposed. In order to protect against the potential abuse of this subject of cross examination, we find that the bias sought to be established through cross examination of a defense witness as to his or her prior arrests must be a particular one, not general. We also find that in order to insure that the probative value of the evidence of arrest not be outweighed by its prejudicial value, there must be a reasonable degree of probability that the witness' prior arrest caused him or her to be biased against the state. Although the arrest of the witness and the defendant on trial need not have arisen from the same incident in order to show a specific bias, we conclude that there must be a nexus between the arrest of the witness and the conclusion of bias. Thus, a general anti-government bias sought to be proven by a prior arrest will not be sufficient.

In the present case, the defense witnesses were arrested on unrelated drug charges at the same location that the appellant was arrested. Their arrest took place approximately two weeks after the appellant's arrest. Although this arrest was unrelated to the appellant's arrest, we find that there was a reasonable degree of probability that this arrest could have caused the witnesses to have a specific bias against the State which could influence their testimony. When Mr. Bradford's testimony that he and his wife did not like anyone to have drugs around the house is viewed in light of the circumstances surrounding his prior drug related arrest, the nexus between the witnesses' arrest and the conclusion of bias is clear. Thus, we find that the trial court did not error in allowing the prosecutor to cross examine the witnesses about their prior arrest in order to show bias.

In light of the foregoing discussion, the appellant's Judgment and Sentence is AFFIRMED.

LANE, P.J., and PARKS, J., concur.

LUMPKIN, V.P.J., and JOHNSON, J., concur in results.

LUMPKIN, Vice Presiding Judge, concurring in results:

I concur in the results reached by the Court in this case. However, as Judge Johnson has pointed out, the issue in this case is impeachment for untruthfulness under 12 O.S.1981, § 2608(B)(1), rather than bias. The Court presents an artful analysis of bias evidence as it relates to prior arrests but we must not be distracted from the facts of the case and the provisions of the Oklahoma Evidence Code. The witness had previously testified regarding not wanting drugs around his house, therefore, the subsequent arrest was valid impeachment evidence. The State asked the question regarding the prior arrest and the witness admitted it. Extrinsic evidence was not involved and the State complied with Section 2608. I therefore concur in the results reached by the Court.

JOHNSON, Judge, concurring in result:

During direct examination, Don Bradford testified that appellant's car had previously broken down and it had been pulled into his yard so that he could fix it. Mr. Bradford testified that on the day in question, the appellant had stopped by his house. Shortly after the appellant had arrived, a little guy, "... I think his name is Brian, he came over also right after [appellant] and he had some dope in a little white thing and he was trying to sell it, you know. That whole street was corrupt. They was trying to sell it all up and down the street". (Tr. 43) When asked whether Brian had tried to sell some dope to him, Mr. Bradford replied, "[n]o, he didn't because my kids was standing there and we didn't want that stuff hanging around, you know". (Tr. 44) Later, when asked whether he knew of anybody in the neighborhood who had complained about Brian selling drugs in that area, Mr. Bradford stated, "[o]nce. I think I was in jail ..." Finally, when asked about his common-law wife, Mr. Bradford replied, "[s]he's up here. She's in jail with me, also. We got in trouble at the same time". (Tr. 47) On cross-examination, and over the objection of the appellant, Mr. Bradford was asked whether six days after the incident involving the appellant, the police had raided his house and arrested him, his wife, and another woman for trafficking in drugs and maintaining a house where drugs were kept. Mr. Bradford replied that that was correct. (Tr. 61)

The majority holds, with limitations, that evidence of a defense witness' prior arrest may be admissible to show bias. However, in the present case, I find that the prosecutor's question on cross-examination concerned Mr. Bradford's credibility. On direct examination, Mr. Bradford had stated that he did not want drugs around his house. In fact, however, he and his wife had been arrested six days later for trafficking in drugs and maintaining a dwelling house where drugs are kept. Thus, such evidence was probative of Mr. Bradford's character for untruthfulness. 12 O.S.1981, § 2608(B)(1).